UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

TONY JAIN, Petitioner

vs.

JOHN NASH, Respondent.

CIVIL NO. 1:CV-04-1336

(Judge Caldwell)

*M E M O R A N D U M*

I. *Introduction*.

Tony Jain, an inmate at the Schuylkill Federal Correctional Institution, Minersville, Pennsylvania, filed this pro se petition under 28 U.S.C. § 2241. Named as Respondent is John Nash, the Warden at FCI-Schuylkill.

Jain challenges the Bureau of Prisons' ("BOP") calculation of his federal sentence. He asserts that the BOP has wrongfully refused to credit his sentence for a period of about four years, his time in custody from December 21, 1993, the date that a federal detainer was lodged against him while he was in New York State custody, through January 21, 1998, the date he was sentenced on his federal offense.

Because the sentencing hearing shows that the judge imposing the federal sentence intended that the sentence include all of the time Petitioner was then serving on his unrelated New

York State conviction, we will grant the petition, but not for all of the time Petitioner seeks. (Petitioner in any event has already had the remainder of the time counted toward the service of his federal sentence.) We will direct the BOP to award Jain credit for the period between April 27, 1994, the day his state sentence was imposed, through January 20, 1998, the day before his federal sentence was imposed, a period of about three years and nine months.

II. *Background.*

On August 27, 1993, Jain was arrested by state authorities in Saratoga County, New York, for attempted robbery. On December 21, 1993, a federal detainer was lodged against him in the United States District Court for the Southern District of New York for a charge of conspiracy to participate in a racketeering enterprise, a violation of 18 U.S.C. § 1962(c). On December 30, 1993, pursuant to a writ of habeas corpus ad prosequendum, Jain was temporarily transferred to federal authorities for arraignment in the Southern District on that charge. It appears that on January 11, 1994, he was again placed in federal custody on an ad-prosequendum writ so that he could cooperate in proceedings against codefendandants. On April 25, 1994, he was returned to state authorities, and was sentenced on

April 27, 1994, to a term of five to ten years' imprisonment on the state charge.[1]

Petitioner was again transferred to federal authorities on an ad-prosequendum writ, although the record is not clear on when it happened. On January 21, 1998, a sentencing hearing was held. The Judge began the proceedings by asking if any changes should be made in the presentence report. Defense counsel wanted to change the notation of Petitioner's first appearance in federal court from January 23, 1993, to January 23, 1994. The court agreed, stating "that means that Mr. Jain has been in custody for almost exactly four years." (Doc. 1, Ex. I, p. 3). Defense counsel replied that it was a bit more than that because he had been brought in on a detainer from Albany County in December 1993. The Judge asked if Petitioner still had time to serve in Albany. Defense counsel said he was still serving a state sentence of five to ten years but that he was eligible for parole in August 1998. The following exchange then took place:

> THE COURT: But nevertheless, the time counting against whatever sentence I impose is a little over four years?
>
> [DEFENSE COUNSEL]: That's correct.

---

[1] Petitioner's state proceedings identify him as Kong Jie Jain, a/k/a Joseph Chen. However, he is known to this court as Tony Jain.

THE COURT: Maybe two years and two months or three months?

[DEFENSE COUNSEL]: Yes, sir.

THE COURT: [to the prosecutor] Do you agree with that?

[THE PROSECUTOR]: Yes, your Honor.

[THE COURT]: Thank you both.

(*Id.* p. 4).

Petitioner's offense conduct was serious. As part of the RICO conspiracy, he had participated in the attempted murder of one person (by shooting her in the head) and the successful murder of another. Nonetheless, it appears that he had provided substantial cooperation that resulted in the convictions of others, higher in the conspiracy, who might not have been convicted absent Petitioner's cooperation. In connection with the government's motion for a downward departure under U.S.S.G. § 5K1.1 to recognize that substantial assistance, defense counsel pointed out that "the Probation Department back in 1995 . . . made a recommendation that the court downwardly depart and impose a sentence of ten years imprisonment on Mr. Jain." (*Id.* at p. 10). After arguing other mitigating factors (e.g., codefendants who had not cooperated had plea-bargained to fifteen years' imprisonment), defense counsel sought a sentence of sixty months, "and also, of course, to make it run concurrent with the time he

is serving at New York State." (Id., p. 12). The Judge responded, "Well, I thought you said earlier that that was already happening,"(*id.*), and defense counsel replied:

> Judge, there is a recommendation in the presentence report that your Honor impose the time concurrently and it may have been the intention of the state judge that it be served concurrently, but your Honor has the final say with respect to whether his time is totally concurrent, partially concurrent or not at all concurrent.
>
> THE COURT: That's the way I understood the guidelines to be.

(*Id.* at pp. 12-13).

The Judge decided to depart downward "on the order of a 50 percent discount from the minimum sentence that [Jain] would otherwise face." (*Id.* at p. 14). He sentenced Petitioner to fourteen years' imprisonment and five years of supervised release. (*Id.*, p. 14). Defense counsel asked:

> And, your Honor, is it the court's intention that the sentence be fully concurrent with the state sentence?
>
> THE COURT: Yes, it will be fully concurrent with the state sentence.

(*Id.* at p. 15-16). The judgment of sentence reflects that the sentence of fourteen years was typewritten but that the Judge had handwritten that the sentence would run "concurrently with state sentence he is currently serving." (*Id.*, Ex. D).

Jain returned to New York State custody on June 22, 1999. (Doc. 8, Ex. 1, ¶ 6). On March 9, 2000, the BOP designated the New York Department of Corrections as the place of service of Jain's federal sentence. (*Id.* at ¶ 7; and Doc. 1, Petition, Ex. F, BOP Memo, p. 40). At that time, the BOP did give Jain substantial credit for time he had spent in federal custody on the ad-prosequendum writ: 1,471 days, running from January 11, 1994, the date federal authorities took him into custody for the federal prosecutions, through January 20, 1998, the day before his federal sentencing. The BOP set his projected release date as March 23, 2006. The BOP specifically noted that Jain was to be awarded "credit" from January 11, 1994, to June 21, 1999, the day before he was returned to New York State custody, because New York had not credited him with this time on his state sentence. (*See* Doc. 1, Ex. E, New York Sentence Monitoring Report, p. 38, and Ex. F, BOP Sentence Monitoring Report, March 13, 2000, p. 42 ("REMARKS...: UPDATED COMP TO REFLECT APPLICABLE CREDIT NY STATE IS NOT AWARDING CREDIT FROM 01-11-1994 to 06-21-1999")).

Then, on December 11, 2001, the Supreme Court of Saratoga County, New York, probably on Jain's pro se motion, issued an "Amended Order," ordering New York authorities to credit Jain's state sentence with time in custody beginning on

April 27, 1994, the date his New York sentence was imposed, until June 22, 1999, the date federal authorities returned him to state custody. (*See* Doc. 9, Jain's Reply, Ex. 3, Amended New York Sentencing Order).

In December 2001, New York State authorities released Jain on parole and transferred him to the BOP to serve the remainder of his federal sentence. In April of 2002, the BOP again confirmed Jain's total jail credit to be 1,471 days, with a projected March 23, 2006, release date. (*Id*. at Ex. G, Sentence Monitoring Good Time Data as of April 1, 2002, p. 44). However, in October 2003, the BOP recalculated his sentence credit and revoked 1,228 days of jail credit on the basis that the Amended Order had granted him credit for that time on his state sentence. (*Id*. at Ex. H, Sentence Monitoring Computation Data as of October 8, 2003, p. 46). As a result, Jain was awarded only 243 days' credit for the period of time from August 27, 1993, the day of his arrest on the New York State charge of attempted robbery, through April 26, 1994, the day before he was sentenced on his New York State charge. (*Id*.). Jain's current projected release date is August 2, 2009, assuming his entitlement to all good-time credits.

III. *Discussion.*

A. *Applicable Law.*

The authority to calculate a federal prisoner's period of incarceration for the sentence imposed, and to provide credit for time served, is delegated to the Attorney General, who exercises it through the BOP. *United States v. Wilson*, 503 U.S. 329, 334-35, 112 S.Ct. 1351, 1354-55, 117 L.Ed.2d 593, 600-01 (1992). The BOP's decision is subject to judicial review under 28 U.S.C. § 2241. *Id.*; *United States v. Brann*, 990 F.2d 98, 103-04 (3d Cir. 1993); *United States v Checchini*, 967 F.2d 348,349-50 (9th Cir. 1992); *United States v Herrera*, 931 F.2d 761, 763-64 (11th Cir. 1991)(citing the appropriate administrative rules). *See also Soyka v Alldredge*, 481 F.2d 303 (3d Cir. 1973) (interpreting 18 U.S.C. § 3568, repealed, the predecessor section to 18 U.S.C. § 3585(b)); *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3d Cir. 1996). The two major factors in a federal sentencing calculation are: (1) when the federal sentence begins; and (2) the time to be credited for custody prior to commencement of the sentence. *Chambers v. Holland,* 920 F. Supp. 618, 621 (M.D. Pa.), *aff'd,* 100 F.3d 946 (3d Cir. 1996).

For offenses committed after November 1, 1987, 18 U.S.C. § 3585(a) provides that the sentence begins to run when

the defendant is taken into custody to begin his federal sentence. *See* 18 U.S.C. § 3585(a)("A sentence to a term of [federal] imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."). A federal sentence does not begin to run when a defendant is taken into federal custody from state custody pursuant to a writ of habeas corpus ad prosequendum, *Ruggiano v. Reish*, 307 F.3d 121, 126 (3d Cir. 2002), because the state remains the primary custodian in those circumstances.[2]

Federal credit for prior custody is controlled by 18 U.S.C. § 3585(b), which provides, in pertinent part, that "no credit may be given toward a federal sentence for time that has previously been credited toward any other sentence." *See also Rios,* 201 F.3d at 272-273. Thus, this statute authorizes credit against a federal sentence only for time "that has not been credited against another sentence." *Wilson*, 503 U.S. at 333, 112

---

[2] The concept of primary jurisdiction, or primary custody, mandates that the first sovereign to arrest a defendant stands first in line of jurisdiction for trial, sentencing, and incarceration until it elects to waive such standing, or its jurisdiction terminates with the conclusion of defendant's satisfaction of the sentence imposed. *Rios v. Wiley*, 201 F.3d 257, 274 (3d Cir. 2000). *Rios* was superseded by statute but on other grounds, as recognized in *United States v. Saintville*, 218 F.3d 246 (3d Cir. 2000).

S.Ct. at 1354 (in section 3585(b), "Congress made clear that a defendant could not receive double credit for his detention time.").

Notwithstanding section 3585(b), the so-called *Willis* credit, *see Willis v. United States*, 438 F.2d 923, 925 (5th Cir. 1971), permits double credit when a defendant's state sentence runs concurrently with a longer federal sentence. In those circumstances, time spent in *presentence* state custody up to the date the state sentence is imposed is credited toward time served on the federal sentence even if the defendant is also receiving credit on his state sentence for the same period of time. *See also* Program Statement 5880.28, *Sentence Computation Manual* (CCA of 1984)(July 19, 1999).

In the Third Circuit, U.S.S.G. § 5G1.3(c) has been interpreted to permit a district court to impose a sentence that is: (1) concurrent retroactively to the date a sentence is imposed on an unrelated state offense; (2) concurrent with the remainder of the state sentence beginning with the date the federal sentence is imposed; or (3) consecutive to the undischarged term of the state sentence. *Ruggiano, supra*, 307

F.3d at 128-129.[3] "Fully concurrent" is another way of saying retroactively concurrent. *Id.* at 130.

As noted above, a federal sentence does not begin to run before it is imposed. Nor, technically speaking, does a

---

[3] Section 5G1.3 of the Sentencing Guidelines, titled "Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment," is the provision designed to guide the district courts in determining whether a sentence of a defendant subject to an undischarged term of imprisonment is to run consecutively or concurrently. Because the state offense is unrelated to the federal offense, the only paragraph relevant here is (c). Section 5G1.3 reads as follows:

> (a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.
>
> (b) If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.
>
> (c) (Policy Statement) In any other case, the sentence for the instant offense *may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense*.

(emphasis added)

federal court have any authority to grant the defendant "credit" for any time served before the imposition of sentence. *Id.* at 124. Thus, the court's authority under section 5G1.3(c) is appropriately labeled an "adjustment," and to avoid confusion as to the sentence imposed, a sentencing court intending to adjust a sentence under section 5G1.3(c) should "state something to the effect of 'I hereby adjust the defendant's federal sentence under § 5G1.3(c) so as to be fully concurrent with his state sentence . . . .'" *Id.* at 133.

If there is any conflict between the sentencing court's oral sentence and its written sentence, the oral sentence prevails. *Id.* (*citing United States v. Faulks*, 201 F.3d 208, 211 (3d Cir. 2000)). When there is no conflict, but only an ambiguity in either the oral or written sentence, the oral sentence must be construed in "the context of the overall proceeding." *Id.* at 133-34 (*citing Rios, supra,* 201 F.3d at 269). The sentencing court's failure to refer to § 5G1.3(c) in its sentencing discussion or written order does not preclude a reviewing court from finding the sentencing court intended to impose a retroactively concurrent sentence. *Id.* at 134; *see also Bianco v. Minor*, 2003 WL 21715347, at *10 (M.D. Pa. 2003) (*citing Ruggiano*).

B. *The Merits*.

Petitioner makes two argument in support of his petition. First, that he would have been eligible for bail on the New York State charge if not for the federal charge and this entitles him to credit on his federal sentence for the requested time frame (December 21, 1993, the date that the federal detainer was lodged against him, through January 21, 1998, the date he was sentenced on his federal offense) even though New York credited him for this time. Second, since the federal sentencing judge intended his sentence to be "concurrent" (meaning fully or retroactively concurrent) with his state sentence, under *Ruggiano*, he is entitled to credit for the time at issue.

The government does not respond to either of these arguments. It asserts that Jain's period of incarceration has been properly calculated because he has been (1) appropriately credited under *Willis* for the time beginning on the date of his arrest on the New York State charge until the state sentence was imposed and (2) appropriately credited under section 3585(b) for any time not credited toward his state sentence.

We conclude that Jain's argument based on *Ruggiano* has merit. As noted, *Ruggiano* decided that U.S.S.G. § 5G1.3(c) permits a sentencing court to impose a sentence that is: (1) concurrent retroactively to the date a sentence is imposed on an

unrelated state offense; (2) concurrent with the remainder of the state sentence beginning with the date the federal sentence is imposed; or (3) consecutive to the undischarged term of the state sentence. *Ruggiano, supra,* 307 F.3d at 128-129. Further, "fully concurrent" is another way of saying retroactively concurrent. *Id.* at 130. Additionally, if there is any conflict between the sentencing court's oral sentence and its written sentence, the oral sentence prevails, *id.,* and when there is sentencing ambiguity, a court required to review the sentence may look to the sentencing transcript. *Id.* at 133-34. Finally, the sentencing court's failure to refer to section 5G1.3(c) in its sentencing discussion or written order does not preclude a reviewing court from finding the sentencing court intended to impose a retroactively concurrent sentence. *Id.* at 134.

Here, the Judge's unambiguous oral sentence was that the federal sentence be fourteen years and that it run "fully concurrent with the state sentence." Thus, to effectuate that sentence, Petitioner is entitled to credit on his federal sentence for the period from April 27, 1994, the day his state sentence was imposed, through January 20, 1998, the day before his federal sentence was imposed.[4]

---

[4] Petitioner has sought credit from December 21, 1993, the date of the federal detainer, but the BOP has already given him credit from August 27, 1993, the date of his arrest, through April

We note that our conclusion is consistent with the sentencing judge's other remarks. Early in the sentencing proceedings, the judge remarked that "the time counting against whatever sentence [he] imposed [would be] a little over four years."[5] Additionally, a retroactive concurrent sentence of fourteen years would closely approximate the ten-year sentence the probation office had recommended in 1995.

The Second Circuit, the court of appeals with authority over the sentencing court, disagrees with *Ruggiano*'s interpretation of section 5G1.3(c), *see United States v. Fermin*, 252 F.3d 102 (2d Cir. 2001), but that does not affect our ruling. Petitioner's sentence was imposed before *Fermin* was decided and even if *Fermin* were applicable, the government's remedy was to appeal the sentence, *Ruggiano*, 307 F.3d at 135-36, not fail to calculate Petitioner's prison term correctly.

---

26, 1994, the day before his state sentence was imposed.

[5] The judge also mentioned "Maybe two years and two months or three months," (*id.*), but this court is unable to determine how this alternative time period was calculated. In any event, the crucial fact is that the Judge expressed the belief that the federal sentence would be retroactively concurrent for whatever state time Jain had already served, whatever that time was.

We will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: April 20, 2005

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

TONY JAIN, Petitioner : CIVIL NO. 1:CV-04-1336

vs. : (Judge Caldwell)

JOHN NASH, Respondent. :

*O R D E R*

AND NOW, this 20th day of April, 2005, for the reasons set forth in the accompanying memorandum, it is ordered that:

1. The Petition for a writ of habeas corpus under 28 U.S.C. § 2241 (doc. 1) is granted.

2. The motion (doc. 2) to proceed in forma pauperis in granted.

3. The BOP shall credit Jain's federal sentence for the period from April 27, 1994, through January 20, 1998.

4. The Clerk of Court is directed to close this file.

/s/William W. Caldwell
William W. Caldwell
United States District Judge